FENNEMORE CRAIG, P.C.
Amy Abdo (No. 016346)
Kevin M. Green (No. 025506)
2394 East Camelback
Suite 600
Phoenix, AZ 85016-3429
Telephone: (602) 916-5000
Email: amy@fclaw.com
Email: kgreen@fclaw.com

Attorneys for Defendant
Capella University, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| James Estrada,<br><br>Plaintiff,<br><br>v.<br><br>Capella University, Inc., a Minnesota company; North Central Association of Colleges and Schools, a foreign not for profit corporation; The Higher Learning Commission, an Illinois corporation; Black Corporations I-III, fictitiously named defendants,<br><br>Defendants. | Case No. 2:17-cv-00032-BSB<br><br>**CAPELLA UNIVERSITY'S MOTION TO DISMISS**<br><br>**(Oral Argument Requested)** |

In this case, Plaintiff, a former doctoral learner at Capella University, alleges that during the dissertation phase of his academic program, he: (1) experienced mentor and committee changes; (2) waited as long as ten days for academic feedback on his dissertation; (3) found one mentor unresponsive when the mentor left the University's employment; and (4) was investigated and exonerated in a research non-compliance inquiry. Based upon those allegations, Plaintiff seeks relief from this Court under a variety of theories, including intentional misrepresentation, negligent misrepresentation, promissory estoppel, breach of contract/third party beneficiary, conspiracy to commit fraud, and unjust enrichment. Yet Plaintiff has not alleged a single representation by

Capella University, and Plaintiff has not alleged a single promise or contractual obligation on the part of Capella University.

In the absence of factual allegations plausibly establishing a claim for relief, Plaintiff's Complaint comprises nothing more than a doctoral learner's expression of dissatisfaction with his academic experience, inviting this Court to second-guess the academic policies and judgments of an accredited university. It is, in short, a claim for educational malpractice, shrouded under a myriad of legal theories. As a matter of law, there can be no claim for educational malpractice.

Further, evaluating each of Plaintiff's claims as pled, Plaintiff fails to plausibly allege an actionable misrepresentation, promise or contract, and further fails to plead sufficient factual matter to state a claim for conspiracy to commit fraud or unjust enrichment. Accordingly, pursuant to Rules 8, 9(b) and 12(b)(6), Capella University respectfully requests that each of Plaintiff's claims be dismissed. This Motion is supported by the following Memorandum of Points and Authorities, and the pleadings and papers on file with the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL BACKGROUND

Plaintiff alleges he enrolled in a Capella University doctoral program in 2010, and between 2010 and 2012 had no grievance with the University.[1] *See* Complaint (ECF No. 1-1, 6-17), ¶ 7. Plaintiff's dissatisfaction stems entirely from his dissertation experience from 2013 to 2015. Upon entering the dissertation phase of the program in 2013, Capella University assigned Plaintiff a mentor to provide feedback and comments on his drafts. *Id.* at ¶ 9. Over the course of his dissertation studies, Plaintiff alleges he experienced three separate mentors and seven different committee members. *Id.* at ¶23.

According to Plaintiff, his original mentor typically provided feedback within two to three days from each submission. *Id.* at ¶ 11. In April 2014, Plaintiff's original mentor allegedly told him

[1] Capella assumes the veracity of well-pled factual allegations for purposes of this motion only, but does not admit the truth of any of the allegations in the Complaint.

he was close to committee approval. *Id.* at ¶ 12. Plaintiff alleges that in that same month, Plaintiff was assigned a new mentor who told him he needed to rewrite the work he had completed on the dissertation to that point in time. *Id.* at ¶ 13. According to Plaintiff, his new mentor took ten days to comment on Plaintiff's drafts and did not fully correct or review the entirety of Plaintiff's submissions, which Plaintiff alleges caused delays in the dissertation process. *Id.* at ¶ 14.

Plaintiff alleges a third mentor was assigned to him in November 2014[2] and that the new mentor advised Plaintiff to "submit his survey (research request)" to the Texas Department of Criminal Justice ("TDCJ"), *Id.* at ¶¶ 15-16. Plaintiff further alleges that the Capella University Institutional Review Board ("IRB") later investigated Plaintiff for non-compliance for submitting a survey to TDCJ without prior approval from the IRB, but exonerated Plaintiff. Complaint, ¶22. According to the Complaint, Plaintiff's third mentor later failed to return phone calls and e-mails in 2015 after leaving Capella University's employ. Plaintiff alleges he was last enrolled at Capella University until September 2015. *Id.* at ¶ 24. Based upon these allegations, Plaintiff asserts claims for: (1) Intentional Misrepresentation; (2) Negligent Misrepresentation; (3) Promissory Estoppel; (4) Breach of Contract/Third Party Beneficiary; (5) Conspiracy to Commit Fraud; and (6) Unjust Enrichment.

## II. APPLICABLE PLEADING STANDARDS

To survive this Rule 12(b)(6) motion to dismiss, the Complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Landers v. Quality Commc'n, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim achieves plausibility only where it contains sufficient factual content to raise the plaintiff's right to relief "above the speculative level" by giving the court grounds to infer a right to relief. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (quoting *Twombly*, 550 U.S. at 555-56). Complaints that allege facts

---

[2] "2013" in paragraph 15 of the Complaint appears to be a typographical error as Plaintiff alleges Capella assigned him a second mentor in April 2014.

establishing a "possibility" of unlawful conduct or conduct "merely consistent with a defendant's liability" fall short of the pleading standard, because they fail to nudge the plaintiff's claims across the line from conceivable to plausible. *Id.* (citing *Iqbal*, 556 U.S. at 678). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While courts treat the well-pled factual allegations of a complaint as true, that presumption of truth does not extend to labels and legal conclusions. *Id.* at 678-80.

Claims sounding in fraud and negligent misrepresentation must also satisfy the particularity requirements of Rule 9(b). *HM Hotel Properties v. Peerless Indem. Ins. Co.*, 874 F. Supp. 2d 850, 855 (D. Ariz. 2012) ("The Rule 9(b) standard also applies to negligent misrepresentation."). Fed. R. Civ. P. 9(b), requires a plaintiff to "state with particularity the circumstances constituting fraud." To satisfy the heightened pleading standard of Rule 9(b) the plaintiff's allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 774 (D. Ariz. 2012) (citations omitted). Specifically, Plaintiff must allege "the who, what, when, where, and how" of the alleged fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003). The particularity requirement of Rule 9(b) are in addition to—and not a replacement for—the requirement of plausibility under *Iqbal* and *Twombly*. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). Thus, where a fraud or negligent misrepresentation claim fails to satisfy even the lower Rule 8(a) threshold, the Court may dismiss the claim without reaching a Rule 9(b) analysis. *Id.* Applying these standards and applicable law, Plaintiff's Complaint fails to state claims for relief, Plaintiff's claims should be dismissed with prejudice.

## III. ANALYSIS

### A. The Court Should Apply the Educational Malpractice Doctrine and Dismiss Plaintiff's Complaint for Failure to State a Claim.

Plaintiff's Complaint should be dismissed in its entirety because it sounds in educational

malpractice, a claim expressly rejected by courts across the country. Merely characterizing the claim under theories other than educational malpractice does not save the claim. Plaintiff complains of multiple mentors and committee members, a ten-day wait for academic feedback on a dissertation, an academic non-compliance investigation, and a mentor who left the University. Such matters are entirely within the purview of the accredited academic institution, which must maintain the academic discretion to assign appropriate faculty, undertake a time-intensive review of dissertation submissions, and carry out an academic non-compliance investigation in order to ensure the academic integrity of its accredited programs.

As the United States Supreme Court has long recognized, courts should show deference to the academic determinations and policies of educational institutions. *Bd. Of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 92 (1978) (noting that judiciary should exercise great restraint in cases involving academic discipline and should decline "to further enlarge the judicial presence in the academic community"); *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 n.11 (1985) (courts should "show great respect for the faculty's professional judgment," allowing "[u]niversity faculties … the widest range of discretion in making judgments as to the academic performance of students").

Consistent with the Supreme Court's reasoning, a majority of jurisdictions that have considered alleged shortcomings similar to those alleged in Plaintiff's Complaint have adopted a categorical bar to "educational malpractice" lawsuits in which students assert claims second-guessing academic institutions' academic processes, procedures, theories, academic decisions or policies. *See Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992) (collecting cases and concluding the "overwhelming majority of states" have disallowed educational malpractice claims); *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 715 (S.C. 2003) (following California law, which "represents the majority of states in refusing to recognize the tort of 'educational malpractice' in claims brought by students"); *Christensen v. S. Normal Sch.*, 790 So. 2d 252, 254-55 (Ala. 2001) (noting that "the overwhelming majority of states considering educational-malpractice claims have

rejected them").

In adopting this prohibition, courts have identified several policy concerns that militate against allowing students to challenge academic policies, procedures, theories or decisions through litigation, including: (1) the lack of a satisfactory standard of care by which to evaluate educators; (2) the inherent uncertainties of the cause and nature of damages in light of such intervening factors as a student's attitude, motivation, temperament, and past experience; (3) the potential for a flood of litigation against schools; and (4) the possibility that such claims will cause the courts to oversee the day-to-day operations of schools. *See, e.g.*, *Jamieson v. Vatterott Educ. Centers, Inc.*, 259 F.R.D. 520 (D. Kan. 2009); *Creighton Univ.*, 957 F.2d at 414-15 (collecting cases); *Dallas Airmotive, Inc. v. Flightsafety Int'l, Inc.*, 277 S.W.3d 696, 700 (Mo.Ct.App. 2008); *Page v. Klein Tools, Inc.*, 461 Mich. 703, 610 N.W.2d 900, 903 (Mich. 2000); *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 473 (Minn. Ct. App. 1999).

Pursuant to these policy considerations, courts across the country routinely dismiss both contract and tort claims based on allegations that a school provided inadequate, substandard, or ineffective educational services. *See, e.g.*, *Jamieson*, 259 F.R.D. 520 (granting summary judgment in favor of school because misrepresentation and contract claims based on allegation that school failed to provide "entry level education" were improper educational malpractice claims); *Houston v. Mile High Adventist Acad.*, 872 F. Supp. 829 (D. Colo. 1994) (dismissing negligence, fiduciary duty, contract and fraud claims against school where claims were based on allegation that school promised it would provide "a foundation of basic knowledge and mental skills" and "strong academic foundation"); *Alligood v. County of Erie*, 749 N.Y.S.2d 349, 350 (2002) (dismissing contract and fraud claims based on allegation that college failed to provide adequate instruction and did not teach program in accordance with syllabus); *Alsides*, 592 N.W.2d at 473 (upholding dismissal of contract, fraud and misrepresentation claims based on allegation that school failed to provide an "effective education"); *Cavaliere v. Duff's Bus. Inst.*, 413 Pa. Super. 357, 368-69 (1992) (upholding dismissal of contract claim based on allegation that school failed to provide quality

education); *Roe v. Saint Louis Univ.*, 2012 WL 6757558, at *10-11 (E.D. Mo. Dec. 31, 2012) (granting summary judgment in favor of university because fraud, negligent misrepresentation, contract, and deceptive practices claims involved "inquiry into the nuances of educational processes and theories"); *Telluselle v. Hawaii Pac. Univ.*, 2012 WL 3800213, at *2-3 (D. Haw. Aug. 31, 2012) (granting summary judgment in favor of university where contract claims were based on university's academic advice).

In a case squarely on all fours with the allegations in Plaintiff's Complaint, the Missouri Court of Appeals upheld the dismissal of a student's contract claims based on the allegation that the University of Missouri failed to properly monitor its faculty. *Lucero v. Curators of Univ. of Missouri*, 400 S.W.3d 1 (Mo. Ct. App. 2013). Applying the educational malpractice doctrine, the *Lucero* court reasoned that "[u]niversities must be allowed the flexibility to manage themselves and correct their own mistakes" and "it is not [the court's] place to micromanage a university's daily operations." *Id.* at 8.

Similarly, in *Zinter v. Univ. of Minnesota*, 799 N.W.2d 243 (Minn. Ct. App. 2011), the court applied the educational malpractice doctrine to a student's contract and promissory estoppel claims premised upon allegations that the University of Minnesota's program director improperly required the plaintiff to take additional courses and told the plaintiff her final project was not sufficiently developed. Dismissing the plaintiff's claims, the *Zinter* court emphasized that courts should not "delve into the nuances of [a school's] processes and theories." *Id.* at 246; *see also Hendricks*, 353 S.C. at 460-61 (holding contract claim could not proceed because it was based on university's improper academic advisement).[3]

---

[3] Although Arizona courts have not yet decided a case involving the educational malpractice doctrine, "[i]n deciding the merits of a claim that involves a novel question of state law, it is the rule in [the Ninth Circuit] . . . that [courts] must try to predict how the highest state court would decide the issue." *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1171 (9th Cir. 2001) (citations and internal quotation marks omitted). In making that determination, this Court may "look to pertinent decisions from other jurisdictions." *Id.*; *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1578 (9th Cir. 1989) (in determining novel questions of state law, courts may turn to "well-reasoned decisions from other jurisdictions"). In light of the numerous well-reasoned opinions from other jurisdictions, it is likely the Arizona Supreme Court would adopt the

In this case, Plaintiff's allegations challenge a host of Capella University's internal academic standards and administrative procedures, including: (1) Capella University's procedures for assigning mentors and dissertation committee members (Complaint, ¶¶ 9, 13, 15, 23, 27, 41, 64); (2) Capella University's process for ensuring that mentors provide prompt and thorough feedback (Complaint, ¶¶ 10, 14, 19, 27, 30, 41, 64); (3) Capella University's decision to investigate Plaintiff in connection with his unapproved submission of a research survey to the Texas Department of Criminal Justice (Complaint, ¶ 21); and (4) Capella University's decision to disallow Plaintiff's use of the results of that survey in connection with his dissertation (Complaint, ¶ 22). However characterized, each of Plaintiff's claims challenge the efficacy of Capella's institutional standards for staffing, vetting and ensuring the integrity of doctoral candidates' academic work. Such claims fall well within the ambit of well-recognized jurisprudence prohibiting judicial interference with the exercise of academic discretion. Because it is improper for Plaintiff to bring academic grievances before this Court and ask the Court to step into the shoes of an educational institution and evaluate the adequacy of its academic policies, procedures and decisions, Plaintiff's claims fail as a matter of law, and his Complaint should be dismissed with prejudice.

**B. The Complaint Fails To Allege Plausible Claims For Relief.**

Even if Plaintiff's claims are considered to be something more than a claim for educational malpractice, each claim fails to state a cause of action under established pleading standards applicable to those claims.

1. Plaintiff's Misrepresentation Claims Fail.

Plaintiff asserts intentional and negligent misrepresentation claims based upon the same core allegations in Paragraphs 26 and 27 of the Complaint, and thus unites the claims by a common shortcoming. Plaintiff fails to plausibly allege a misrepresentation to serve as the foundation for either claim. In the absence of a well-pled factual misrepresentation, Plaintiff cannot maintain claims for intentional or negligent misrepresentation. For these, and other more specific reasons set

---

educational malpractice doctrine and apply that doctrine as a bar to Plaintiff's claims.

forth in the following analysis, Plaintiff's misrepresentation claims should be dismissed.

a. Plaintiff Fails to State Claims For Intentional Misrepresentation and Negligent Misrepresentation Under Rules 8 and 9(b).

In order to state a claim for intentional misrepresentation, plaintiff must plausibly allege: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; and (9) the hearer's consequent and proximate injury. *Comerica Bank v. Mahmood*, 224 Ariz. 289, 292-93 ¶ 14 (App. 2010). Further, in order to state a claim for fraud based upon an alleged failure to disclose, a plaintiff must allege non-conclusory facts demonstrating that the defendant owed him a duty of disclosure. *Haisch v. Allstate Ins. Co.*, 197 Ariz. 626 (App. 2000). Even under Rule 8, Plaintiff's fraud claim fails to pass muster, as he does not allege even a single misrepresentation. Instead, he proclaims in conclusory fashion that Capella University "made representations regarding the educational opportunities. . . including the ability to undertake and complete a Ph.D. program in a reasonable and timely manner." Complaint, ¶ 26. Such a claim is the equivalent of declaring "Capella University made misrepresentations," and even under the Rule 8 plausibility standard, such an allegation fails to move beyond the speculative and conclusory level in the absence of factual allegations sufficient to support an inference of liability.

Plaintiff further asserts that Capella University "omitted to disclose the likelihood of turnover in mentor and committee members," unidentified "delays inherent in their system" and "the right to take up to ten days for review of every submission." *Id.* at ¶ 27. Yet Plaintiff fails to identify any "delays inherent in the[] system," and further fails to allege any facts establishing a duty on the part of Capella University to disclose unanticipated changes in mentor or committee members, or a duty to disclose that a faculty member might take ten days to review a dissertation submission. *Id.* at ¶ 28. Taken together with the allegations in Paragraphs 29-34 in which Plaintiff

simply checks off a formulaic recitation of the elements of a fraud cause of action, Plaintiff's fraud claim fails to satisfy the plausibility standard. *See Gould v. M & I Marshall & Isley Bank*, 860 F.Supp.2d 985, 987 (D. Ariz. 2012) ("Legal conclusions couched as factual allegations 'are not entitled to the assumption of truth' … and 'are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted). Accordingly, Plaintiff's intentional misrepresentation claim should be dismissed under Rule 8, without reaching a Rule 9(b) analysis.

Even assuming *arguendo* that Plaintiff's intentional misrepresentation claim satisfies the plausibility standard Rule 8(a), which it does not, Plaintiff does not satisfy the heightened Rule 9(b) standard. In particular, Plaintiff fails to allege the "who, what, when, where, and how" of the alleged fraud. *See Vess*, 317 F.3d at 1102. Instead, the Complaint merely alleges that Capella made representations "through its general advertisements made online and through other sources" regarding "the ability to undertake and complete a Ph.D. program in a reasonable and timely manner based upon the specific course offerings and dissertation process." Complaint, ¶ 26. Such vague allegations of generic, unspecified "representations" is insufficient to meet Plaintiff's burden of pleading fraud with particularity. Similarly, Capella's alleged representation that students may be able to "undertake and complete a Ph.D. program in a *reasonable and timely manner*" cannot sustain a fraud claim. Under Arizona law, the alleged representation that Plaintiff would be able to complete a Ph.D. program in a "reasonable and timely manner" is vague and imprecise and is not sufficiently definitive to support a claim for fraud. *Staheli v. Kauffman*, 122 Ariz. 380, 383 (1979). Thus, Plaintiff's intentional misrepresentation cause of action fails as a matter of law.

In addition to failing to allege the specific contents of each alleged fraudulent misrepresentation, Plaintiff fails to allege when and where each such representation was made by Capella University and received by Plaintiff, what the effect of each representation was on Plaintiff (*i.e.*, what specific damages were caused by each representation), and how each representation was false. Complaint, ¶¶ 26-34. Instead, Plaintiff formulaically states the representations were material, that Capella University knew the representations were false and intended for Plaintiff to rely on

them, and that Plaintiff was unaware of the falsity of the representations and therefore relied on them to his detriment. *Id.* at ¶¶ 28-34. Plaintiff's intentional misrepresentation claim should be dismissed because Plaintiffs' allegations fail to state a claim.

b. Plaintiff Fails to State a Claim for Negligent Misrepresentation Under Rules 8 and 9(b).

Plaintiff relies upon the same two allegations set forth for his fraud claim (*e.g.*, Complaint ¶¶ 26-27), in an effort to erect a negligent misrepresentation claim. Yet, once again, Plaintiff fails to allege facts plausibly establishing any representation at all. To prevail on a claim for negligent misrepresentation, a plaintiff must plead that: (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely on that information; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) the plaintiff suffered damages as a result. *Mur–Ray Mgmt. Corp. v. Founders Title Co.*, 169 Ariz. 417, 422-24 (App. 1991).

Plaintiff's negligent misrepresentation claim should be dismissed as a matter of law because Plaintiff's allegation that the University "made representations regarding the educational opportunities. . . including the ability to undertake and complete a Ph.D. program in a reasonable and timely manner," fails to identify the representation made. Plaintiff fails to allege facts establishing what constitutes a "reasonable and timely manner." He does not allege that Capella University promised Plaintiff he would complete his degree at all, let alone in any certain amount of time. Further, Plaintiff's allegation that the University failed to "disclose the likelihood of turnover in mentor and committee members," unidentified "delays inherent in their system" and "the right to take up to ten days for review of every submission," cannot support a claim, as Plaintiff fails to allege facts establishing an obligation on Capella University to make such disclosures.

Moreover, "negligent misrepresentation requires a misrepresentation or omission of a *fact*. A promise of future conduct is not a statement of fact capable of supporting a claim of negligent

misrepresentation." *McAllister v. Citibank*, 171 Ariz. 207, 215 (App. 1992) (emphasis in original). Here, Plaintiff asserts he would be able to "undertake and complete a Ph.D. program in a reasonable and timely manner." Complaint, ¶¶ 27, 37. Because such an allegation does not pertain to a representation of fact, but instead concerns future action—*i.e.*, Plaintiff's future pursuit of a doctoral degree in a "reasonable and timely manner"—Plaintiff's negligent misrepresentation fails as a matter of law.

Plaintiff's negligent misrepresentation claim does not satisfy either the particularity standard of Rule 9(b) or the plausibility standard of Rule 8(a). *HM Hotel Properties*, 874 F. Supp. at 855 ( ("The Rule 9(b) standard also applies to negligent misrepresentation."). As set forth in Section III.B.1.a. *supra*, Plaintiff's allegations fail to allege with specificity the alleged misrepresentations at issue in this case, and when or where such alleged misrepresentations occurred. Plaintiff fails to state a claim for negligent misrepresentation claim, and the claim should be dismissed.

2. <u>Plaintiff Fails to State a Claim for Promissory Estoppel.</u>

Plaintiff's promissory estoppel claim also fails under Rule 12(b)(6). To state a claim for promissory estoppel, Plaintiff must allege: (1) a promise clear and unambiguous in its terms; (2) reliance by Plaintiff; (3) that is both reasonable and foreseeable; and (4) Plaintiff was injured by his reliance. *Contempo Const. Co. v. Mountain States Tel. & Tel. Co.*, 153 Ariz. 279, 282 (App. 1987). Promissory estoppel "is not a theory of contract liability, but instead a replacement for a contract when parties are unable to reach a mutual agreement." *Johnson Int'l, Inc. v. City of Phoenix*, 192 Ariz. 466, 474 ¶ 49 (App. 1998). "[P]romissory estoppel rests upon a promise to do something in the future." *Trollope v. Koerner*, 106 Ariz. 10, 18 (1970). Expressing an intention to do something is not a promise. *Johnson*, 192 Ariz. at 474 ¶ 51 (citation omitted). Moreover, as with fraud, pleading of promissory estoppel requires the allegation of a specific promise. *Contempo Constr. Co.*, 153 Ariz. at 282. The primary problem for Plaintiff is that he does not plausibly allege a promise.

Plaintiff's promissory estoppel claim alleges that Capella "made certain promises to Plaintiff

regarding Capella's ability to provide to him an opportunity to earn a Ph.D. through the process of offering course work, a mentor and a committee for his dissertation, the timely feedback on it and guidance from his mentor." Complaint, ¶ 41. But what are those "certain promises"? Plaintiff does not allege facts allowing Capella or this Court to discern what they may be. Without more, Plaintiff's allegation is nothing more than a conclusory statement, checking off by rote components of the cause of action. As a matter of law, the allegation fails to satisfy Rule 8's plausibility standard. Furthermore, Plaintiff's allegations make clear that Capella did, in fact, provide him with course work, a series of mentors, and a dissertation committee that provided Plaintiff with feedback on his work. Complaint, ¶¶ 8, 9, 12-17. In this regard, Plaintiff fails to identify a promise by Capella that was left unfulfilled. Plaintiff, thus, fails to allege a plausible promissory estoppel claim, and that claim should be dismissed.

3. Plaintiff Fails To Allege a Breach of Contract Claim.

As an initial matter, in any contract action, *Iqbal*/*Twombly* pleading standards require a plaintiff to identify "the specific contract language whereby the [defendant] purportedly assumed a legally-enforceable obligation to Plaintiff." *See Lee v. Nat'l Ass'n of Letter Carriers*, No. 3:08cv344, 2009 U.S. Dist. LEXIS 125395, *19 (S.D. Ohio June 22, 2009). Plaintiff's breach of contract claim fails at this entry level, because his Complaint does not allege the existence of a specific contract provision in which *any* of the named defendants undertook any obligation to Plaintiff. Plaintiff's breach of contract claim should be dismissed for this reason alone.

Plaintiff's breach of contract claim also fails as a matter of law because Plaintiff has not alleged that he is an intended third-party beneficiary of any alleged agreement between Capella, on the one hand, and accrediting agencies such as the Higher Learning Commission (the "HLC") or the North Central Association of Colleges and Schools (the "NCACS"). To recover for breach of contract on a third-party beneficiary theory, the plaintiff must establish that the contracting parties unequivocally expressed an intent that their contractual undertakings would inure to the benefit of the plaintiff himself. *See Norton v. First Fed. Savings*, 128 Ariz. 176, 178 (1981) (citation omitted).

Moreover, the contemplated benefit must be both intentional and direct. *Id.* It is not enough that a contract *may* operate to a person's benefit, but it "must appear that the parties intended to recognize the [person] as the *primary* party in interest and as privy to the promise." *Sherman v. First Am. Title Ins.*, 201 Ariz. 564, 567 ¶ 6 (App. 2002) (citation omitted) (emphasis in original).

Assuming *arguendo* that a contract exists between/among Capella, the HLC and/or the NCACS, Plaintiff's Complaint falls far short of plausibly alleging that he is a third-party beneficiary to that purported contract. Plaintiff's breach of contract allegations consist of little more than bare legal conclusions that there is a contract between Capella and NCA/HLA and that "students, including Plaintiff, are the primary beneficiaries" of that contract. Complaint, ¶ 47-51. Plaintiff's Complaint contains a quantum sum of zero allegations that support the requisite conclusion that Capella, the HLC, and/or the NCACS intended Plaintiff to be "the primary party in interest" to their alleged contract. While Plaintiff's allegations arguably demonstrate that the purported contract among the defendants, *may* operate to his benefit, such speculation is insufficient to plausibly allege Plaintiff's third-party beneficiary status.

Even assuming *arguendo* that Plaintiff does state a claim for third-party beneficiary status, which he does not, Plaintiff's claim still fails because it does not identify a specific contractual provision that was breached. Put differently, Plaintiff alleges the breach of something which he characterizes as a "contract" but fails to identify the substance of the parties' contractual undertakings that would support the occurrence of an alleged breach. Because Plaintiff's Complaint fails to allege the contractual basis that gives rise to the defendants' alleged breach, Plaintiff fails to state a claim for breach of contract. *See Silving v. Wells Fargo Bank, NA*, CV 11-0676-PHX-DGC, 2012 WL135989, at *8 (D. Ariz. Jan. 18, 2012) (dismissing contract claim for failure to allege breach of specific contract provisions).

4. <u>Plaintiff Fails to State a Claim for Conspiracy To Commit Fraud.</u>

Plaintiff's Complaint also fails state a claim for conspiracy to commit fraud because the Complaint does not allege the requisite elements of such a claim. "For a civil conspiracy to occur

two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Baker v. Stewart Title & Trust of Phoenix*, 197 Ariz. 535, 545 ¶ 30 (App. 2000). In other words, a civil conspiracy claim "requires an underlying tort which the alleged conspirators agreed to commit." *Id.* at ¶ 42.

In this case, Plaintiff's conspiracy to commit fraud claim fails for multiple reasons. First, as discussed above, Plaintiff's Complaint fails to state a claim for fraud. Having failed to adequately allege the underlying tort upon which his conspiracy claim is premised, Plaintiff's conspiracy claim should be dismissed for that reason alone. *See, e.g., In re Mortgage Elec. Registration Sys. (MERS) Litig.*, CV 10-215-PHX-JAT, 2011 WL 251453, at *7 (D. Ariz. Jan. 25, 2011) (dismissing conspiracy claim because the plaintiff failed to state a claim for the underlying tort).

Plaintiff's conspiracy claim further fails because the Complaint does not allege *any* non-conclusory, factual allegations of an agreement by two or more parties to commit fraud. To the contrary, Plaintiff's conspiracy claim is limited to two, wholly formulaic, conclusory paragraphs. Specifically, Plaintiff alleges that "NCA/HLC knowingly condoned, overlooked, specifically participated in the fraudulent inducement of students to enroll at Capella" and that "NCA/HLC knowingly continued its accreditation [of Capella] for the benefit of itself and the detriment of students such as Plaintiff." Complaint, ¶¶ 59-60. There are no factual allegations whatsoever supporting these assertions, and it is precisely this type of unadorned, conclusory material that courts must reject in ruling on motions to dismiss. Because Plaintiff has not and cannot allege anything other than conclusory allegations, his conspiracy claim should be dismissed.

5. <u>Plaintiff Fails To Allege a Plausible Unjust Enrichment Claim</u>.

Finally, Plaintiff's Complaint fails to allege a plausible claim for unjust enrichment. To state a claim for unjust enrichment, Plaintiff bears the burden of alleging non-conclusory factual allegations supporting each of the following elements: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and impoverishment; (4) the absence of justification for the enrichment and impoverishment; and (5) the absence of a remedy provided by law." *Freeman*

*v. Sorchych*, 226 Ariz. 242, 251 ¶ 27 (App. 2011).

Rather than supporting these elements with well-pleaded factual material, Plaintiff vaguely concludes that it would be unconscionable for Capella to keep the $124,000 in tuition paid by Plaintiff over the course of Plaintiff's Ph.D. program "because Capella did not provide a meaningful and appropriate mentor relationship for Plaintiff, timely responses to his dissertation submissions, timely and appropriate guidance and approval through the process, or the ability to complete the dissertation and … degree program in a reasonable and timely manner, and a reasonable cost." Complaint, ¶ 62-65. Plaintiff offers no factual allegations to support the notion that the feedback he received was not "meaningful" or timely, as there are no allegations establishing that the University promised anything other than the nature and timeliness of academic feedback it provided. Plaintiff cannot erect a standard of academic sufficiency or a standard timeline for academic review of a dissertation out of thin air, and then ask this Court to find fault with Capella University for its failure to adhere to such an undisclosed, arbitrary standard.

Furthermore, Plaintiff's allegations reveal that he did, in fact, receive the benefit of completing course work, engaging with multiple mentors and faculty members on his dissertation committee, and receiving prompt feedback and on his work product. *Id.* at ¶¶ 8-9, 11-16. Standing alone, these allegations belie any suggestion that Capella's alleged enrichment and Plaintiff's alleged impoverishment are unjustified. Plaintiff enrolled in a doctoral program at Capella, paid the necessary tuition and fees to allow him to work toward a doctoral degree, and received educational services from Capella and its faculty over the course of nearly five years. Nor does the fact that Plaintiff failed to obtain approval of his dissertation and earn his degree support a claim for unjust enrichment. "The possibility of academic failure is implicit in the nature of" the relationship between a student and a university. *Maas v. Gonzaga Univ.*, 27 Wn. App. 397, 401, 618 P.2d 106 (1980). Plaintiff has not pled and cannot plead facts supporting all of the elements of his alleged unjust enrichment claim, and the Court should dismiss that claim under Rule 12(b)(6).

## IV. CONCLUSION

Plaintiff cannot erect a cause of action merely by setting forth a list of academic grievances and asserting, in hindsight, arbitrary unexpressed standards to which he believes an academic institution should have been held in the timing, substance and nature of its academic review and policy enforcement. Nor may Plaintiff simply pair the fact of Capella University's accreditation by the HLC with conclusory allegations to fabricate an inflammatory claim of conspiracy to commit fraud. The Federal Rules of Civil Procedure require more. Without factual allegations setting forth an actionable representation, promise, contract or conspiracy allowing for a reasonable inference of liability, Plaintiff's claims fail as matter of law and should be dismissed. For the foregoing reasons, Capella requests that the Court dismiss Plaintiff's Complaint with prejudice and award Capella its reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

DATED January 12, 2017.

FENNEMORE CRAIG, P.C.

By */s/ Kevin M. Green*
Amy Abdo
Kevin M. Green
Attorneys for Defendant
Capella University, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Marshall A. Martin
LAW OFFICES OF MARSHALL A. MARTIN
8585 E. Hartford Drive
Suite 800
Scottsdale, Arizona 85255
Attorneys for Plaintiff

/s/ *Colleen A. Loos*
An employee of Fennemore Craig, P.C.

12484248