**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| James Estrada, | ) | No. CV-17-00032-PHX-SPL |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| Capella University, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

In 2010, Plaintiff James Estrada enrolled as a graduate student at Capella University, Inc. ("Capella") to pursue his doctorate degree (hereinafter, "Ph.D."). (Doc. 25 at 3.) Plaintiff alleges that he enrolled at Capella after being told by a Capella employee that it would cost approximately $72,000 to complete the coursework required for his Ph.D. and that during the dissertation process "he would have a mentor at all times with whom he would work directly and submit drafts and other related materials for his dissertation." (*Id.* at 2.) According to Plaintiff, industry standards require mentors to provide full reviews and edits of students' work within three to four calendar days of submission. (*Id.*) Plaintiff estimates that Ph.D. students generally submit their work for review between thirty and forty times throughout the dissertation process. (*Id.* at 3.)

Plaintiff completed his Ph.D. coursework and began his dissertation in 2013. (*Id.* at 3.) Initially, Plaintiff was provided with a mentor who typically gave him feedback on his work within three days of submission. (*Id.*) By April 2014, Plaintiff's mentor told him that he "was close to committee approval, a major step within the dissertation program,"

but would be assigned to a different mentor moving forward. (*Id.* at 3.) "At this critical juncture Plaintiff went two weeks with no mentor." (*Id.*) Plaintiff's new mentor then advised Plaintiff he "needed to start the entire process over and provide a total rewrite of the work completed on the dissertation up to that point." (*Id.* at 4.) At this time, Capella changed its policy to allow mentors "10 working days to review and return written work." (*Id.*)

In November 2014, Plaintiff was re-assigned to yet another mentor. (*Id.*) Although it is not entirely clear, it appears that Plaintiff unenrolled at Capella for a period of time while he was waiting for a response to a research request sent to the Texas Department of Criminal Justice (TDCJ) as part of his dissertation. (*Id.*) Plaintiff waited five months for approval of his study proposal from Capella's Institutional Review Board. (*Id.*) Plaintiff's third mentor told him that when "the opportunity arose with the [TDCJ] he should immediately submit his survey (research request) to them to be completed before they 'change their mind.'" (*Id.* at 4.) After receiving what Plaintiff believed to be approval from the IRB, he submitted his research to the TDCJ. (*Id.* at 5.) Despite having been told to submit his survey to the TDCJ by his mentor, Plaintiff was investigated by the IRB for non-compliance. (*Id.*) Plaintiff was eventually exonerated by the IRB, but was not allowed to use the results of his study—a decision which further delayed his dissertation. (*Id.*)

Plaintiff brings the present action against Defendant Capella for the following claims in relation to his experiences as a graduate student: intentional misrepresentation (Count I); negligent misrepresentation (Count II); promissory estoppel (Count III); and unjust enrichment (Count IV). (Doc. 25 at 6-12.) Plaintiff also brings suit against Defendant The Higher Learning Commission ("HLC") for conspiracy to commit fraud (Count IV). (*Id.* at 9-11.)

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it

rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Court may dismiss a complaint for failure to state a claim under Federal Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, and (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacificia Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Under Arizona law, a claim for intentional misrepresentation requires a plaintiff to establish the following: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; (9) the hearer's consequent and proximate injury." *Frazer v. Millennium Bank, N.A.*, No. 2:10-CV-01509-JWS, 2010 WL 4579799, at *3 (D. Ariz. Oct. 29, 2010) (internal citation omitted). Because a claim of intentional misrepresentation is a claim of fraud, *Snyder v. HSBC Bank, USA, N.A.*, 913 F.Supp.2d 755, 773 (D. Ariz. 2012), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "A complaint of fraud must specify 'the who, what, when, where, and how' of the alleged misconduct and the injury caused by a plaintiff's reliance on the misrepresentation." *Snyder*, 913 F.Supp.2d at 774.

Here, Plaintiff alleges Defendant Capella informed him of the number of units required to complete the coursework for his Ph.D. and the cost of each unit, but failed to (1) explain that the program's requirements could change during the course of his enrollment and (2) disclose the likelihood of turnover among mentors and committee members. (Doc. 25 at 6-7.) Yet Plaintiff does not identify who made such representations on behalf on Defendant Capella nor allege when such representations were made with the specificity required of Rule 9(b). It follows then that because Plaintiff has not identified who made such representations, he has certainly not demonstrated that the Capella employee knew the information provided to Plaintiff was false. *Dawson v. Withycombe*, 216 Ariz. 84, ¶ 32, 163 P.3d 1034, 1047 (App. 2007) ("To maintain a claim for

fraudulent misrepresentation, the claimant must demonstrate the speaker's knowledge of the falsity of the statement."); *see also Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988) ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."). Plaintiff has failed to state a claim for intentional misrepresentation.

Plaintiff's claim for negligent misrepresentation fails for similar reasons. Claims for negligent misrepresentation "must meet the particularity requirements of Rule 9(b)." *In re Ariz. Theranos, Inc., Litig.*, 256 F.Supp.3d 1009, 1032 (D. Ariz. 2017). Here, Plaintiff bases his claim for negligent misrepresentation on the same allegations as that which he based his intentional misrepresentation claim. (Doc. 25 at 8.) Not only has Plaintiff failed to meet the heightened pleading standards required of Rule 9(b), but these allegations are not based on what Defendant Capella told him about its Ph.D. program but what it did *not* tell him. "Failure to disclose information is different than giving false or incorrect information, which is the foundation of a negligent misrepresentation claim." *Dumont v. HSBC Mortg. Corp., USA*, No. CV-10-1106-PHX-MHM, 2010 WL 3023885, at *6 (D. Ariz. Aug. 2, 2010). Plaintiff has failed to state a claim for negligent misrepresentation.

In order to state a claim for promissory estoppel, Plaintiff must show that: (1) Defendant made a promise to Plaintiff; (2) Defendant should have reasonably foreseen that Plaintiff would rely on that promise; (3) Plaintiff actually relied on that promise to his detriment; and (4) Plaintiff's reliance on the promise was justified. *Schrock v. Fed. Nat'l Mortg. Ass'n*, No. CV-11-0567-PHX-JAT, 2011 WL 3348227, at *7 (D. Ariz. Aug. 3, 2011). Here, Plaintiff alleges that "Capella made certain promises to Plaintiff regarding [it's] ability to provide him an opportunity to earn a Ph.D. through the process of offering course work, a mentor and a committee for his dissertation, the timely feedback on it and guidance from his mentor." (Doc. 25 at 9.) Yet Plaintiff's own allegations undermine this claim. For instance, Plaintiff has alleged that he had: (1) completed the coursework

portion of his Ph.D. program, (2) worked with three mentors and a committee during the dissertation process, and (3) received feedback and guidance from those mentors. (Doc. 25 at 3-6.) Because Plaintiff has failed to allege that any promises made by Defendant Capella to Plaintiff about the *opportunity* to earn a Ph.D. were unfulfilled, Plaintiff has failed to state a claim for promissory estoppel.

"Under Arizona law, a claim of civil conspiracy must be based on an underlying tort, such as fraud in this instance." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (internal citation omitted). Here, Plaintiff alleges Defendants Capella and HLC "have entered into an agreement whereby Capella pays fees to HLC and HLC provides accreditation services." (Doc. 25 at 9.) Plaintiff believed that Defendant Capella's status as an accredited online university would benefit him and ultimately make his degree more valuable in the workforce. (*Id.* at 10.) Plaintiff further alleges that Defendant HLC "failed in its obligation to Plaintiff to properly insure that Capella was acting in the best interest of its students" and has ultimately "knowingly condoned, overlooked, and specifically participated in the fraudulent inducement of students to enroll at Capella." (Doc. 25 at 10-11.) Because this claim is necessarily based on a conspiracy between Defendants to commit a fraud, it is subject to the heightened pleading standard set forth in Rule 9(b). *Bridgepoint Constr. Servs. Inc. v. Lassetter*, No. CV-16-00078-PHX-JJT, 2016 WL 3916191, at *2-3 (D. Ariz. July 19, 2016). Because Plaintiff is required to allege with particularity the circumstances of the fraud and has failed to do so, Plaintiff has not stated a claim for conspiracy to commit fraud.

"[T]o recover under a theory of unjust enrichment, a plaintiff must demonstrate five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Premier Funding Grp. LLC v. Aviva Life & Annuity Co.*, No. CV-14-01633-PHX-DGC, 2015 WL 789743, at * 3 (D. Ariz. Feb. 25, 2015) (internal citation omitted). Here, Plaintiff alleges that Defendant Capella has been enriched by his tuition—over $124,000—without providing

Plaintiff with the benefits he should have received including "a meaningful and appropriate mentor relationship for Plaintiff, timely responses to his dissertation submissions, timely and appropriate guidance and approval through the process, or the ability to complete the dissertation and therefore degree program in a reasonable and timely manner, and <u>at</u> [sic] a reasonable cost." (Doc. 25 at 12.) Yet as Defendants point out, there is no complained of enrichment nor absence of justification for the enrichment and impoverishment because Plaintiff did in fact receive educational services from Capella in exchange for his tuition dollars. Accordingly,

**IT IS ORDERED:**

1. That Defendants' Motion to Dismiss (Doc. 29) is **granted**;
2. That this action is **dismissed with prejudice** in its entirety; and
3. That the Clerk of Court shall **terminate** this action and enter judgment accordingly.

Dated this 22nd day of March, 2018.

Honorable Steven P. Logan
United States District Judge